# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION

| | |
|---|---|
| MATTHEW HENDERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NUMBER: |
| | ) |
| | ) |
| METROPOLITAN LIFE | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Comes now the Plaintiff, Matthew Henderson, and hereby files his Complaint against Metropolitan Life Insurance Company.

## PARTIES

1. The Plaintiff, Matthew Henderson ("Henderson"), was an employee of Metropolitan Life Insurance Company and insured under MetLife Short Term Disability ("STD") and MetLife Long Term Disability ("LTD"), as part of the MetLife Options and Choices Plan Number 512, (collectively, "the Plan").

2. Defendant, Metropolitan Life Insurance Company ("MetLife"), was Plaintiff's employer and the Claims Administrator for the Plan.

## JURISDICTION AND VENUE

3. This action arises under the Employment Retirement Income Security

Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.  Plaintiff asserts claims for disability benefits, enforcement of ERISA rights and statutory violations of ERISA under 29 U.S.C. § 1132.  This Court has subject matter jurisdiction under ERISA without respect to the amount in controversy or the citizenship of the parties.  29 U.S.C. § 1132(a), (e)(1), and (f) and 28 U.S.C. § 1131.  Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b).

## INTRODUCTION

4.      The traditionally held purpose of the ERISA statute is "to promote the interest of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983).  Mr. Henderson, as an employee insured for disability, was supposed to be treated as a beneficiary by Defendant as statutory fiduciary.  Instead, Defendant has victimized Mr. Henderson by engaging in utterly reprehensible claim handling procedures.  The shortcomings of ERISA as it relates to claims for "welfare" benefits have been exploited by the Defendant to avoid paying Mr. Henderson's valid claim.

## STATEMENT OF FACTS

5.      Mr. Henderson is an insured under MetLife Short Term Disability ("STD") and MetLife Long Term Disability ("LTD"), as part of the MetLife Options and Choices Plan Number 512, (collectively, "the Plan")  MetLife is the sponsor and administrator of the policy, which provides insureds, like Mr.

Henderson, disability benefits.

6.     Mr. Henderson's date of birth is April 18, 1965.  He worked as a Lead Business Systems Analyst at MetLife.  He initially went out of work on July 22, 2014 and returned to work on September 29, 2014.  STD benefits were approved through his return to work date.  His disabling conditions forced him out of work again on November 4, 2014.

7.     Mr. Henderson has numerous disabling medical conditions including Asperger's Syndrome, Bipolar Disorder, Chronic Pancreatitis, PTSD, Obsessive-compulsive disorder, agoraphobia with panic disorder, sleep apnea, diabetes, left hand tremor, facial numbness, hyperlipidemia, left shoulder pain, insomnia, allergic reactions, elevated blood pressure, headaches, fatigue and anemia.  His necessary medications and the many symptoms of his conditions result in disabling physical and mental impairments.  Although MetLife wrongly concluded that many of Mr. Henderson's impairments were pre-existing and therefore excluded from coverage under the LTD policy, Mr. Henderson's conditions that would not be excluded are independently disabling.

8.     MetLife has failed to provide a full copy of the STD plan but on information and belief, the STD policy does not contain a pre-existing condition clause.

9.     Mr. Henderson's job included occasionally exerting up to 10 pounds,

constant sitting, occasional standing, reaching and handling, keyboard use, and travel. His job required Mr. Henderson to make judgments and decisions while maintaining concentration and attention. Mr. Henderson's Job as a Lead Business Systems Analyst also included interactions with the public and co-workers, frequent adaptation to change and independent planning.

10. Mr. Henderson's treatment provider, Mary Hartsell, DNP, opined in August 2014 that Mr. Henderson was disabled by the following impairments: "poor focus, easily distracted, poor coping skills as his anxiety has [increased]; panic attacks; insomnia." Ms. Hartsell noted the following diagnoses: Axis I – Asperger's D/O, PTSD, OCD, MOD; Axis III - sleep apnea, chronic pancreatitis, HTN; Axis IV - severe stress; Axis V - 45. *See* Hartsell APS dated August 18, 2014, attached hereto as Exhibit "A".

11. Contrary to the opinions of Mr. Henderson's treatment provider, MetLife denied his STD claim by letter dated December 10, 2014. *See* STD Denial Letter, dated December 10, 2014, attached as Exhibit "B".

12. Mr. Henderson appealed the denial and provided additional evidence to MetLife. *See* STD Appeal, dated December 18, 2014, attached as Exhibit "C".

13. In a treatment note dated December 22, 2014, Ms. Hartsell indicated that Mr. Henderson was still having difficulty with mood and sleep. She stated, "[Mr. Henderson] is not able to return to work since his medications are not

regulated and is most likely to fall asleep at work on current regime." *See* Hartsell treatment note dated December 22, 2014, attached hereto as Exhibit "D".

14. On January 9, 2015, Ms. Hartsell again noted that Mr. Henderson was still unable to return to work. *See* Hartsell treatment note dated January 9, 2015, attached hereto as Exhibit "E".

15. MetLife upheld the denial of Mr. Henderson's STD benefits by letter dated March 27, 2015. *See* STD Final Denial dated March 27, 2015, attached hereto as Exhibit "F".

16. MetLife denied Mr. Henderson's LTD claim as of March 5, 2015, by letter dated December 10, 2015. *See* LTD Denial dated December 10, 2015, attached hereto as Exhibit "G".

17. Plaintiff's counsel wrote to MetLife on May 26, 2016 and requested his complete claim file, copies of the policies at issue and all correspondence related to Mr. Henderson's disability claims. *See* Rep. Letter and Doc. Request dated May 26, 2016, attached hereto as Exhibit "H".

18. Plaintiff appealed the denial of his LTD benefits by letter dated June 7, 2016. Plaintiff's counsel provided additional evidence and reserved the right to submit additional evidence once the claim file was received. *See* LTD Appeal dated June 7, 2016, attached hereto as Exhibit "I".

19. By letter dated June 16, 2016, MetLife acknowledged receipt of the

appeal letter. MetLife stated that Mr. Henderson's request for the claim file would be handled by the claims unit under separate cover and gave him a 60-day extension to submit information related to his claim. *See* MetLife letter dated June 16, 2016, attached hereto as Exhibit "J".

20. On July 18, 2016, after the claim file had still not been received, Plaintiff's counsel wrote to MetLife to again request the documents pertaining to his claim and informed MetLife that its refusal to supply the requested documents was impeding Plaintiff's ability to work up an appeal. *See* Corr. to MetLife re 2nd Doc. Req. dated July 18, 2016, attached hereto as Exhibit "K".

21. By letter dated July 21, 2016, MetLife informed Plaintiff's counsel that requests for Plan documents should have to be directed to the plan administrator, also MetLife. *See* MetLife claim file letter dated July 21, 2016, attached hereto as Exhibit "L".

22. On October 27, 2016, MetLife upheld the denial of LTD benefits to Mr. Henderson and issued a final denial. *See* MetLife LTD Final Denial dated October 27, 2016, attached hereto as Exhibit "M".

23. MetLife's final denial letter, like its previous denials, is riddled with attempts to "cherry pick" the record for evidence and dates that supports its denial. The letter ignores Mr. Henderson's records and plethora of evidence that supports his disability claim.

24.     On December 15, 2016, Plaintiff's counsel sent a request for Plan documents to MetLife at the HR/Benefits address.  *See* Request for Plan docs to MetLife HR dated December 15, 2016, attached hereto as Exhibit "N".

25.     MetLife only produced the summary plan descriptions and withheld the full LTD and STD policies and all other requested Plan documents.  *See* LTD and STD summary plan descriptions, attached hereto as Exhibit "O" & "P".  To date Plaintiff has still not received all Plan documents from MetLife.

26.     Defendant's refusal to provide requested documents has substantially burdened Plaintiff in pursuing his claims for benefits.

27.     As of this date, Mr. Henderson has been denied benefits rightfully owed to him under the Plan.  MetLife's decision to deny short term and long term disability benefits under the Plan was grossly wrong, without basis, and contrary to the evidence.

28.     Mr. Henderson met and continues to meet the Plan's definition of "Disabled" under both the STD and LTD policies.

29.     The Defendant did not establish and maintain a reasonable claim procedure or provide a full and fair review of Mr. Henderson's claim as required by ERISA.  Instead, Defendant acted only in its own pecuniary interests and violated ERISA by conduct including, but not limited to, the following: reviewing the claim in a manner calculated to reach the desired result of denying benefits and

failing to timely provide requested Plan documents.

30. Upon information and belief, the Plan does not grant discretionary authority to determine eligibility for benefits to MetLife or to any other entity who may have adjudicated Mr. Henderson's claim. Therefore, the Court should review the Plaintiff's claim for benefits under a *de novo* standard. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In the alternative, the denial of Plaintiff's benefits constitutes an abuse of discretion.

31. Upon information and belief, MetLife was required to both evaluate and pay claims under the Plan at issue, creating an inherent conflict of interest.

32. Mr. Henderson has exhausted any applicable administrative review procedures, and MetLife's refusal to pay benefits is both erroneous and unreasonable and has caused tremendous hardship on Plaintiff.

## DEFENDANT'S WRONGFUL AND UNREASONABLE CONDUCT

**A. Defendant's Determination that Plaintiff's Disability is Based on a Pre-existing Condition is Erroneous and Unreasonable.**

33. Mr. Henderson received STD for several weeks from July 2014 to September 2014. He went out of work again only a few weeks later in November 2014 and MetLife illogically determined he was not disabled. In the STD determination, MetLife failed to consider the disabling impairments created by all of his conditions and instead only focused on his mental health issues.

34. On information and belief the STD policy did not contain a pre-existing condition limitation on benefits and all of Mr. Henderson's impairments should have been considered in MetLife's determination.

35. In considering his claim for LTD benefits, MetLife erroneously excluded a number of Mr. Henderson's conditions as pre-existing. MetLife failed to consider the significant limitations caused by Mr. Henderson's numerous medical conditions which would not have been excluded from coverage and ultimately deny his rightfully owed benefits.

**B. Defendant's Decision to Deny Disability Benefits was not Supported by Substantial Evidence.**

36. In its consideration of Mr. Henderson's claim, MetLife only retained paid reviewers to assess his file. MetLife presumably had the right to have Mr. Henderson examined by a doctor but did not. MetLife instead based its denials entirely on the allegation that Mr. Henderson's medical records do not demonstrate that his disabilities make him unable to work, yet it never sought even one independent physical examination. Further, in denying Mr. Henderson's claim, MetLife failed to give proper weight to the medical evidence provided by his treating physicians.

1. <u>Defendant's Reliance on Paper-Reviewers to Deny Benefits on the Basis of Insufficient Evidence was Arbitrary and Capricious.</u>

37. Mr. Henderson's claim file is replete with medical records from his

treating physicians.  MetLife was in possession of multiple records which included various office visits for his physical impairments as well as behavioral health assessments.  All the records provided demonstrate Mr. Henderson's diagnosed conditions were extremely debilitating.

38.    Despite Mr. Henderson's treatment provider's opinions about his condition and inability to work, MetLife's paid reviewer chose to ignore the treatment provider's opinions and instead made a decision based upon his own review of Mr. Henderson's medical records.  The reviewing physician noted that discussion of Mr. Henderson's medication side effects could require a supplement to his report of over 100 pages yet failed to consider any impairment the side effects caused.  The paid claim reviewer, who never examined Mr. Henderson in person, dismissed the opinion of Mr. Henderson's treatment provider who had provided care to Mr. Henderson and was qualified to properly assess his restrictions and limitations.

39.    The records provided by Mr. Henderson's long standing medical providers, who have no stake in the outcome of his case, clearly show that Mr. Henderson is disabled based on numerous examinations, testing, and procedures. MetLife's paid file reviewers on the other hand, never examined Mr. Henderson and based all decisions on the paper medical records.  The court has previously given deference to treating physicians' opinions:

> As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the [plaintiff]. At least where the treating doctor's opinion    is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.

*Bain v. Continental Cas. Co.*, 1999 U.S. Dist. LEXIS 10144, 29 (S.D. Ala. June 28, 1999), Quoting *Marchetti v. Sun Life Assurance Co. of Canada*, 30 F. Supp. 2d 1001, 1009 (M.D. Tenn. 1999). In *Bain* the court found that the defendant insurance company "unreasonably (i.e., arbitrarily and capriciously) dismissed all of their (treating physicians) opinions" when the company relied on the paid reviewer's opinion instead of getting the treating physician's opinions.

40.    Paid experts are more often than not pre-disposed or preconditioned. Courts have consistently expressed their skepticism of such "experts" and held that their reviews to be the very essence of arbitrariness and capriciousness.  *Bennet v. Kemper HAT-Svcs, Inc.* 514 F.3d 547, 554-55 (6th Cir. 2008); *Montour v. Harford Life and Acc. Ins. Co.*, 588 F.3d 623 (9th Cir. 2009); *Regula v. Delta Family Care Plan* 226 F.3d 1130, 1143 (9th Cir. 2001).  The fact that the reports of paid experts are consistently in conflict with the opinions of treating doctors' opinions should be evidence of a process that results in bias.  Clearly in Mr. Henderson's case, these decisions indicate that his own provider's evaluations should be afforded greater weight than those of MetLife's paid reviewers.  Accordingly, Defendant's denial of Mr. Henderson's disability benefits was based on insufficient evidence and was arbitrary and capricious.

2. <u>Defendant Unreasonably Failed to Properly Consider Mr. Henderson's Non-Exertional Limitations.</u>

41. MetLife repeatedly maintains that Mr. Henderson is not disabled while completely ignoring the non-exertional limitations that he experiences from not only his medical conditions but also from his necessary prescription medications.

42. Courts have determined that non-exertional limitations, including (1) intellectual and psychological limitations, including those related to the side effects of prescription medications and pain; (2) limited manual dexterity; and (3) a limited ability to remain seated for an extended period of time; should be considered and can be important aspects of vocational capacity. *See Rabuck v. Harford Life and Accident Ins. Co.*, 522 F. Supp. 2d 844, 876-77 (W.D. Mich. 2007) (holding that failure to consider non-strength limitations of former company president with short-term memory limitations rendered Transferable Skills Analysis "incredible").

43. Mr. Henderson's drowsiness, fatigue and symptoms from his prescription medications leave him unable to maintain concentration and complete even simple tasks. Mr. Henderson's conditions also interfere with his ability to sleep, which leaves him drowsy and unable to function and focus throughout the day. The side effects of his medication, coupled with his lack of sleep, leave Mr. Henderson drowsy and impaired and unable to work. Mr. Henderson's

prescriptions were detailed in his medical records. It is unreasonable to deny that the many medications he takes would result in no impairing side effects. Taking all Mr. Henderson's non-exertional limitations together - the medication side effects and functional limitations caused by sleep disturbances – it is clearly unreasonable for MetLife to ignore the impact these non-exertional limitations have on Mr. Henderson's ability to perform day to day activities, much less his job duties.

**C.     Defendant is in violation of ERISA 502(c), 29 U.S.C.1132(c) for Refusing to Supply all Requested Plan Information.**

44.     In accordance with ERISA 502(c), 29 U.S.C.1132(c), it is the duty of a plan administer to respond to a written request for information within 30 days after such request, a violation of which may result in penalties for an administrator's refusal to supply required information.

45.     ERISA allows the imposition of such penalties pursuant to 29 U.S.C. § 1132(a)(1)(A) & (c); ERISA § 502(a)(1)(A) & (c) provides for penalties of $100.00 per day against administrators that refuse to supply information required to be produced under ERISA as follows:

> (c)(1) Any administrator….[who fails to provide certain information] …(B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30

days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

ERISA 502(c), 29 U.S.C. 1132(c).

46. Plaintiff originally requested Plan documents from MetLife on May 26, 2016. (*See* Exhibit "H"). The Plan documents were requested a second time on July 18, 2016. (*See* Exhibit "K"). MetLife instructed Plaintiff's counsel that Plan documents would have to be requested from MetLife's Benefits/HR Department on July 21, 2016 but enclosed the claim file. (*See* Exhibit "L").

47. Plaintiff again requested Plan documents from MetLife at the Benefits/HR address on December 15, 2016. (*See* Exhibit "N").

48. When MetLife produced the STD & LTD Plan documents in January 2017, only the Summary Plan Descriptions were provided. (*See* Exhibits "N", "O" and "P").

49. To date, MetLife has not provided Plaintiff with a copy of the complete policies at issue.

50. Defendant's refusal to provide requested documents has substantially burdened Plaintiff in pursuing his claims for benefits.

## CAUSES OF ACTION

### COUNT ONE
### ERISA (Claim for Benefits Owed Under Plan

51.     Plaintiff hereby incorporates by reference each and every fact as if it were restated herein.

52.     At all times relevant to this action, Mr. Henderson was a participant and insured under MetLife Short Term Disability ("STD") and MetLife Long Term Disability ("LTD"), as part of the MetLife Options and Choices Plan Number 512, (collectively, "the Plan") within the meaning of 29 U.S.C. § 1002(7), and was eligible to receive disability benefits under the Plan.

53.     As more fully described above, the refusal to pay Mr. Henderson benefits under the Plan constitutes a breach of Defendant's obligations under the Plan and ERISA.   Defendant's decision to deny Mr. Henderson's benefits constitutes an abuse of discretion as its decision was not reasonable and based on substantial evidence.

54.     Mr. Henderson brings this action to recover benefits due to him and to enforce his rights under the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B).

### COUNT TWO
### Claim for Enforcement, Penalties and other Relief Under ERISA 502(c), 29 U.S.C.1132(c) for Refusal to Supply Requested Plan Documents

55.     Plaintiff hereby incorporates by reference each and every fact as if it were restated herein.

56. In accordance with ERISA 502(c), 29 U.S.C.1132(c), it was the duty of Defendant to respond to a written request for information within 30 days after such request.

57. Defendant failed to timely supply Plan documents after repeated requests and continues to refuse to supply complete copies of the STD and LTD policies at issue.

58. ERISA allows the imposition of penalties pursuant to 29 U.S.C. § 1132(A)(1)(a) & (c); ERISA § 502(A)(1)(a) & (c). The section provides for penalties of $100.00 per day against administrators that refuse to supply information required to be produced under ERISA.

59. Due to Defendant's gross violation of ERISA § 502 (c), Mr. Henderson brings this action for relief for payment to Plaintiff of such penalties as allowed for violation of this Section and to enforce Defendant's obligation to supply requested Plan information.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court to enter judgment for Plaintiff and otherwise enter an order providing that:

1. The decision should be reviewed using the arbitrary and capricious standard of review;

2. That the Court may take and review the records of Defendant and any

other evidence that it deems necessary to conduct an adequate arbitrary and capricious review;

3. From at least November 4, 2014, Mr. Henderson met and continues to meet the Plan's definition of "Disabled";

4. Defendant shall pay Mr. Henderson all benefits due for the period from at least November 4, 2014, 2014 to the present, in accordance with the Plan;

5. Defendant shall pay to Plaintiff such penalties as allowed for the violation of ERISA § 502 (c);

6. Defendant shall pay to Plaintiff such prejudgment interest as allowed by law;

7. Defendants shall pay Plaintiff's costs of litigation and any and all other reasonable costs and damages permitted by law;

8. Defendants shall pay attorney's fees for Plaintiff's counsel;

9. Plaintiff shall receive such further relief against Defendants as the Court deems lawful, just and proper.

Respectfully Submitted,

_/s/ Brian L. Kinsley_____
Brian L. Kinsley, Esq.
blkinsley@crumleyroberts.com
CRUMLEY ROBERTS, LLP
2400 Freeman Mill Road, Ste. 200

Greensboro, NC 27406
Phone: 336-333-9899
Fax: 336-333-9894
NC State Bar No. 38683
Local Civil Rule 83.1 Counsel


Peter H. Burke, Esq.
*Appearance anticipated*
pburke@burkeharvey.com

Amanda Stansberry-Johns, Esq.
*Appearance anticipated*
ajohns@burkeharvey.com

BURKE HARVEY, LLC
3535 Grandview Parkway
Suite 100
Birmingham, Alabama 35243
Phone:  205-930-9091
Fax:   205-930-9054

*Attorneys for Plaintiff Matthew Henderson*


## PLEASE SERVE DEFENDANT BY CERTIFIED MAIL AT:

Metropolitan Life Insurance Company
Plan Administrator – Long/Short Term Disability Plan
Human Resources – Global Benefits
501 U.S. Highway 22
Bridgewater, NJ  08807